IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 10, 2007

## STATE OF TENNESSEE v. DENISE WIGGINS

**Appeal from the Criminal Court for Shelby County**
**No. 04-01850     W. Otis Higgs, Judge**

---

**No. W2006-01516-CCA-R3-CD  - Filed November 2, 2007**

---

The Appellant, Denise Wiggins, was convicted by a Shelby County jury of one count of aggravated child abuse and one count of aggravated child neglect of her five-year-old daughter.  The trial court subsequently merged the two Class A felonies into a single conviction for aggravated child abuse. Following a sentencing hearing, Wiggins was sentenced to twenty years imprisonment as a violent offender.  On appeal, Wiggins raises two issues for our review: (1) whether the evidence is sufficient to support the convictions; and (2) whether the sentence imposed is excessive.  After review, we conclude that the evidence is sufficient to support Wiggins' conviction for aggravated child abuse. We conclude, however, that the evidence is legally insufficient to support her conviction for aggravated child neglect.  With regard to sentencing, we remand for resentencing based upon the misapplication of enhancing factors and for adherence with the holding of *Blakely v. Washington*.

**Tenn. R. App. P. 3; Conviction for Aggravated Child Abuse Affirmed; Conviction for Aggravated Child Neglect Vacated and Dismissed; Remanded for Resentencing**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Robert Jones, Shelby County Public Defender, Phyllis Aluko, Assistant Public Defender (on appeal); Jennifer Johnson and Glenda Adams, Assistant Public Defenders (at trial), Memphis, Tennessee, for the Appellant, Denise Wiggins.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; William L. Gibbons, District Attorney General; and Vanessa King, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Factual Background**

The Appellant is the mother of the five-year-old victim in this case. The proof at trial, in the light most favorable to the State, established that on Thanksgiving morning 2003, the victim and her two younger siblings were watching television in the bedroom at their residence. Also in the bedroom was the Appellant, who was ironing clothes. After finishing ironing, the Appellant wrapped the cord around the iron, leaving it on the ironing board, and left the room. Following the Appellant's exit, the victim plugged the cord into the receptacle and proceeded to burn her brother and sister with the iron. Hearing the children screaming, the Appellant returned to the bedroom. Upon reentering the bedroom, the Appellant told the victim to put the iron down, and the victim complied. The Appellant then picked the iron up and proceeded to burn the victim's leg, explaining that she was going to show the victim how it felt to be burned by an iron. The Appellant, who worked as a nurse's assistant at a nursing home, later placed ointment on the wound and bandaged the burned area; however, no medical attention was sought.

On December 1, 2003, Rachelle Hood and her daughter, Ryan, took the victim and the victim's younger brother to the movies. Mrs. Hood attended church with the Appellant and, due to the Appellant's dire financial plight, was providing a place for the Appellant and her family to live. En route to the movie theater, Mrs. Hood noticed that the victim was limping. During the movie, Ryan took the victim to the restroom and returned very upset. Ryan informed her mother that when she helped the victim pull down her pants to use the bathroom, she saw a very large, infected burn on the victim's leg. When Mrs. Hood asked the victim what had occurred, the victim informed her that "my mamma burned me." When the group left the theater, the victim had to be carried, as she was no longer able to walk. The group proceeded to the Appellant's house for permission to take the victim to the hospital for treatment. The Appellant gave her permission but did not accompany Mrs. Hood. Mrs. Hood first took the Appellant to a nearby hospital but was referred to LeBonheur Children's Medical Center.

Upon arrival at LeBonheur, Mrs. Hood was informed that, prior to any treatment, consent by a parent of the minor victim was required. Mrs. Hood returned to the Appellant's home and, accompanied by the Appellant, returned to the hospital. According to hospital records, the burn was on the upper part of the left leg and was several days old. The wound appeared dirty, but no sign of infection was found. A medical expert opined that the victim had sustained a second-degree burn with elements of a first-degree burn and that the burn would have been very painful to the victim. The victim's treating physician concluded, based upon the victim's reported history of the injury, that the wound was not accidentally inflicted. A pediatrician who specialized in child abuse evaluation also was of the opinion that the burn was not an accident.

On March 23, 2004, a Shelby County grand jury returned a two-count indictment charging the Appellant with aggravated child abuse and aggravated child neglect. At trial, the Appellant did not deny that she burned the victim, but she claimed that it was accidental. According to the Appellant, she entered the bedroom, after hearing screams, and found the victim holding the hot iron, and, when she tried to take the iron from the victim, it fell and landed on the victim's leg. According to to the Appellant, she initially treated the wound with Vaseline but later applied antibiotic cream and wrapped the wound, which she claimed never blistered.

At the conclusion of the proof, the Appellant was convicted as indicted, with the two convictions being merged into a single conviction for aggravated child abuse. On April 20, 2006, the Appellant was sentenced to a term of twenty years in confinement, to be served at 100%.

**Analysis**

On appeal, the Appellant raises two issues for our review: (1) whether the evidence is sufficient to support the convictions; and (2) whether the sentence imposed by the trial court is excessive.

## I. Timely Filing of Motion for New Trial and Notice of Appeal

As a preliminary matter, the State argues that the appeal should be dismissed because the Appellant's motion for new trial was untimely filed, which further resulted in the untimely filing of the notice of appeal document. The trial court's sentencing order was entered on April 20, 2006. The motion for new trial was filed and denied on June 22, 2006, sixty-three days after the trial court's sentencing order was entered. The notice of appeal document was filed on July 17, 2006.

A motion for new trial must be made in writing or reduced to writing within thirty days of the "date the order of sentence is entered." Tenn. R. Crim. P. 33 (b). This provision is mandatory, and the time for the filing cannot be extended. Tenn. R. Crim. P. 45(b); *State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997). Thus, the State is correct that the Appellant's motion for new trial and notice of appeal were not timely filed. While this court has no authority to waive the untimely filing of a motion for new trial, we may waive, in the interest of justice, the untimely filing of the notice of appeal. Tenn. R. App. P. 4(a); *see also State v. Givhan*, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1980). Moreover, although we are precluded from considering any other issue raised in an untimely motion for new trial, this court is not precluded from reviewing the sufficiency of the evidence or a sentencing issue. Tenn. R. App. P. 3(e); *see also State v. Boxley*, 76 S.W.3d 381 (Tenn. Crim. App. 2001). Because these are the only two issues raised by the Appellant on appeal, we elect, in the interest of justice, to waive the untimely filing of the notice of appeal and review the issues upon the merits.

## II. Issues Raised by the Appellant

### a. Sufficiency of the Evidence

First, the Appellant contends that the evidence presented at trial was not sufficient to allow a rational juror to find her guilty of either aggravated child abuse or aggravated child neglect beyond a reasonable doubt. In considering the issue of sufficiency of the evidence, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e).

Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Initially, we are constrained to note that the Appellant "acknowledges that under existing standards of appellate review, the Appellate Court may determine that the weight of the evidence was a matter left solely for the jury to resolve." She asserts, however, that "a closer examination of the *Jackson* standard requires the Court to affirm a conviction only when it determines that the evidence, if believed by the jury, would convince the average mind of the [A]ppellant's guilt beyond a reasonable doubt." According to the Appellant, compliance with this mandate "would require the Appellate Court to weigh and evaluate the evidence to the extent necessary to conduct a *Jackson* review."

This court has repeatedly held that *Jackson v. Virginia* addresses two important aspects of a sufficiency review on appeal: (1) the manner of review of the convicting evidence; and (2) the standard of review for legal sufficiency. The scope of our examination of the evidence is not equivalent to that of a jury. In a challenge to the sufficiency of the evidence, this court does not retry the defendant. We emphasize that our examination in a sufficiency review is not to revisit inconsistent, contradicting, implausible, or non-credible proof, as these issues are resolved solely by the jury. Rather, we look to the record to determine whether there was substantive probative evidence to support the verdict. The second inquiry, the question of legal sufficiency, then follows: whether the record contains evidence from which the jury could have found the essential elements of the crime beyond a reasonable doubt. Every reasonable hypothesis of innocence need not be dispelled; it is only necessary that there exists proof which supports the elements of the crime.

As noted, the Appellant was convicted of aggravated child abuse and aggravated child neglect, with the child neglect conviction merging into the child abuse conviction. To support a conviction for aggravated child abuse, as relevant to this case, requires proof that the Appellant knowingly, other than by accidental means, treated a child age six years or less in such a manner as to inflict injury which resulted in serious bodily injury. T.C.A. § 39-15-402(a) (2006). Serious bodily injury is defined as bodily injury which involves a substantial risk of death, protracted

unconsciousness, extreme physical pain, protracted or obvious disfigurement, or protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty. T.C.A. §39-11-106(a)(34) (2006).

With regard to this conviction, the Appellant does not contest that she did in fact inflict the injury upon the then five-year-old victim with an iron. Rather, she merely asserts that the proof is insufficient to establish that she "knowingly" inflicted the injury, as opposed to the injury occurring accidently. She contends that the only proof presented which contradicted her testimony that she accidently caused the injury was that of the victim herself. Moreover, she asserts that the victim's testimony should be evaluated in light of the fact that the victim admitted that she did not understand the difference between the truth and a lie when being questioned. However, as noted above, we are not permitted to reweigh or reevaluate the evidence presented to the jury. The jury was present and heard both the victim and the Appellant's accounts of the events leading up to the infliction of the injury. It was within their province to make a credibility determination, and we will not second guess their decision.

The evidence in the light most favorable to the State established that the Appellant entered the bedroom to find that the victim had burned her siblings with the iron. The Appellant picked up the iron and, after telling the victim she was going to show her "what it felt like to be burned," intentionally placed the hot iron on the victim's upper left thigh. Moreover, contrary to the Appellant's assertion that only the victim's testimony supported the jury's conclusion that the incident was not accidental, a pediatrician who specializes in child abuse evaluation also testified at trial that, based upon his review of the victim's case, the burn was not the result of an accident. Additionally, the record is replete with proof that the burn was intensely painful to the victim. Based upon this proof, we conclude that the evidence is sufficient to support the conviction for aggravated child abuse.

The Appellant also asserts that the evidence is insufficient to support her conviction for aggravated child neglect. To convict of aggravated child neglect, as indicted in this case, requires proof of the following essential elements:

(1)    that the Appellant did knowingly other than by accidental means:

(a)    neglect a child so as to adversely affect the child's health and welfare; and
(b)    the act of neglect resulted in serious bodily injury to the child; and
(c)    that the child was six (6) years of age or less.

*See* T.C.A. § 39-15-401, -402(a)(1),(b) (2003); *see also* T.P.I. Crim. 21.01 (7th ed. 2000).

In support of the Appellant's conviction for aggravated child neglect, the State, on appeal, follows the same argument as advanced by the prosecutor at trial, *i.e.*, "The [Appellant] admitted she

did not seek medical treatment for the victim after she was burned." While the question of whether the Appellant sought medical treatment is relevant to the above stated first element of the offense, it is not dispositive of the second element required for conviction.[1] The proof at trial fails to demonstrate that it was the act of neglect, or failure to seek medical treatment, which <u>resulted</u> in serious bodily injury. Rather, the proof established that it was the Appellant's act of abuse which produced the serious bodily injury to the victim. Accordingly, the evidence is insufficient to support the conviction for aggravated child neglect.

### b. Sentencing

Next, the Appellant argues that the trial court imposed an excessive sentence in the case. In support of this argument, the Appellant contends that the trial court erred by failing "to acknowledge that it had the authority to impose a lesser sentence[, instead indicating] that the law gave [it] no other choice than to impose a mid-Range One 20 year sentence . . . [and by failing] to acknowledge all of the mitigators presented at sentencing[, particularly] . . . the [Appellant's] previous expressions of remorse." The Appellant asserts also that the trial court's application of three enhancement factors was error, as the factors were included within the elements of aggravated child abuse. Finally, the Appellant contends that the application of all enhancement factors not found by a jury and used to enhance the sentence violated her Sixth and Fourteenth Amendments rights as expressed by the holding of *Blakely v. Washington*. In this regard, we would note that the Appellant committed the instant offenses in 2003, prior to the June 7, 2005 amendment to various provisions of Tennessee's Sentencing Act in response to *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004). *See* 2005 Tenn. Pub. Acts Ch. 353 §§ 1, 6, 8. The "Compiler's Notes" to the amendment states that the act shall apply to criminal offenses committed on or after June 7, 2005 and that offenses committed prior to that day shall be governed by prior sentencing law. T.C.A. § 40-35-210(c), Compiler's Notes. The notes continue, however, that defendants sentenced after June 7, 2005, for crimes committed previously, may elect to be sentenced under the new act by executing a waiver. *Id*. The sentencing hearing in this case was conducted in April 2006. However, the record before us indicates that no such waiver was filed in the instant case. Thus, the Appellant's sentence must be reviewed under the sentencing provisions in effect prior to the 2005 sentencing amendment.

The Appellant was convicted of aggravated child abuse, a Class A felony, as a Range I offender. The appropriate sentence range for a Range I offender convicted of a Class A felony is fifteen to twenty-five years. T.C.A. § 40-35-112(a)(1) (2003). Prior to the 2005 sentencing amendment, the presumptive sentence for a Class A felony was the midpoint within the range absent enhancing or mitigating factors. T.C.A. § 40-35-210(c) (2003). The presumptive sentence is then increased for applicable enhancing factors and decreased for applicable mitigating factors. *Id*. at (d), (e).

---

[1] Aggravated child abuse and aggravated child neglect are codified in the same penal statute. T.C.A. § 39-15-402. The offense of "child abuse and neglect" is a single offense which may be committed by alternative courses of conduct. *State v. Mateyko*, 53 S.W.3d 666, 668 n.1 (Tenn. 2001); *State v. Hodges*, 7 S.W.3d 609, 622 (Tenn. Crim. App. 1998).

At the conclusion of the sentencing hearing, the trial court found the presence of four statutory enhancement factors: (1) that the victim was particularly vulnerable due to age or disability; (2) that the Appellant treated the victim with exceptional cruelty; (3) that the personal injuries to the victim were particularly great; and (4) that the Appellant abused a position of private trust. *See* T.C.A. § 40-35-114(5), (6), (7), (16) (2003). As noted, the Appellant contests application of factors (5), (6), and (7) upon grounds that they are included within the elements of the offense of aggravated child abuse. The State concedes, and we must agree, that the Appellant is correct. *See State v. Jones*, 883 S.W.2d 597, 603 (Tenn. 1994). Thus, it was error to apply those factors.

Additionally, the Appellant asserts that her sentence was excessive because the "trial judge . . . failed to acknowledge all of the mitigators present at sentencing.[2] In particular, [the court] failed to acknowledge the [Appellant's] previous expressions of remorse." The Appellant further contends that "consideration of her expressions of remorse is necessary to determine whether the trial court properly weighed it as a mitigating factor." The Appellant is correct that this court has previously held that statements of remorse may be considered as mitigating evidence under Tennessee Code Annotated section 40-35-103(13) (2003).

At the sentencing hearing, the trial judge made the following pronouncements with regard to his sentencing obligation under the sentencing act:

> . . . So here I am being asked to sentence this lady. I'm sure she's sorry this happened, but I am bound by the law. She's been convicted of a most serious felony. Carries fifteen to sixty years in the penitentiary.
>
> I mean, it's just terrible that this Court has to follow the law. I can't suspend her sentence. I can't probate a class "A" felony. It's just most unfortunate that this lady has to pay this kind of price. And not only does she loose [sic] her daughter, but the little girl looses [sic] her mother. I think that that is what weighs so heavily upon me in this situation.

At a later point in the sentencing process, the trial judge remarked:

> I would urge the defense to appeal this sentence. I think that another Court looking at this might find that this Court is all wrong. My inclination, to be perfectly honest with you, would be not to impose a twenty year sentence on this mother, to be perfectly honest with you.

Furthermore, at sentencing, the trial judge commented that, "If there are mitigating factors, the fact is, is that she has no previous record." After review, it is altogether unclear from the record

---

[2]Under pre-amendment law, appeal of a sentence was permitted if, "The enhancement and mitigating factors were not weighed properly, and the sentence is excessive under the sentencing considerations set out in § 40-35-103 . . . ." T.C.A. § 40-35-401(b)(2)(repealed 2005).

before us whether the trial judge, as argued by the Appellant, "simply failed to acknowledge the mitigators," rejected the mitigators after a review of the sentencing proof, considered the mitigators within the context of other sentencing purposes, or was under the belief that, irrespective of the mitigators, the court could not deviate from the midrange sentence of twenty years.

Last, the Appellant challenges the trial court's application of all four of the enhancement factors upon grounds that such "enhancement of [her] sentence based upon factors not found by the jury" violated her Sixth and Fourteenth Amendment rights to a trial by jury. The Appellant is correct that application of the four enhancement factors to increase the length of her sentence, absent their finding by a jury, was violative of her constitutional rights. *See Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004); *see also Cunningham v. California*, ___ U.S. ___, 127 S. Ct. 856 (2007); *Harvey Webster v. State*, No. M2006-00886-CCA-R3-PC (Tenn. Crim. App. at Nashville, June 27, 2007) *perm. app. dismissed*, (Tenn. Sept. 7, 2007); *State v. Mark A. Schiefelbein*, No. M2005-00166-CCA-R3-CD (Tenn. Crim. App. at Nashville, Mar. 7, 2007) *perm. app. denied*, (Tenn. June 18, 2007). Thus, the Appellant is correct that, pursuant to *Blakely* and *Cunningham*, no statutory enhancement factors should have been applied to overcome the presumptive minimum sentence, which in this case was twenty years. Nonetheless, because this issue is raised for the first time on appeal, any sentencing challenge available to the Appellant under *Blakely* was waived based on the Appellant's failure to object at trial to what she now contends is a constitutionally invalid sentencing scheme. *See* Tenn. R. App. P. 36(a).

Notwithstanding, based upon the trial court's misapplication of enhancing factors, the uncertainty of mitigating factors, and the requirement that the sentencing determination must comport with the holding of *Blakely v. Washington*, we conclude that a remand for resentencing is necessitated.

Upon remand, the trial judge is instructed, as required by the pre-amendment provisions of 40-35-210, to consider, either from the transcript of the April 20, 2006 hearing or through the introduction of supplemental evidence if the trial court so chooses:

> (5) evidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114;
>
> > (d) . . . Should there be enhancement but no mitigating factors for a Class A felony, then the court shall set the sentence at or above the midpoint of the range. Should there be mitigating but no enhancement factors for a Class A felony, then the court shall set the sentence at or below the midpoint of the range;
> >
> > (e) . . . Should there be enhancement and mitigating factors for a Class A felony, the court must start at the midpoint range, enhance the sentence within the range as appropriate for the enhancement

factors, and then reduce the sentence within the range as appropriate for the mitigating factors;

(f) Whenever the court imposes a sentence, it shall place on the record either orally or in writing what enhancement or mitigating factors it found, if any, as well as findings of fact as required by § 40-35-209.

T.C.A. § 40-35-210(b)(5)(d)(e)(f).

## CONCLUSION

Based upon the foregoing, the Appellant's conviction for aggravated child abuse is affirmed. The Appellant's twenty-year sentence for this conviction is vacated and the case is remanded for resentencing. The Appellant's conviction for aggravated child neglect is vacated and dismissed with instructions that an amended judgment form be entered to reflect this holding.

_____
DAVID G. HAYES, JUDGE